IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ANTRAIL MUNERLYN,<br>Institutional ID No. 02399387,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL HAKIZIMANA, *et al.*,<br><br>Defendants. | § § § § § § § § § § § § | Civil Action No. 1:23-CV-00202-BU |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Antrail Munerlyn, an inmate incarcerated by the Texas Department of Criminal Justice (TDCJ), brings this action against Correctional Officer Emmanuel Hakizimana, maintenance worker FNU Lukomba, and nurse FNU Mayfield (collectively, "the Defendants"), alleging that they violated his constitutional rights. *See* Dkt. No. 1 at 3. Munerlyn's claims are subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because Munerlyn has been granted leave to proceed *in forma pauperis*, Dkt. No. 9, and he sues government officials, *see* Dkt. No. 1.

In complying with this Court's Order, Dkt. No. 20, Munerlyn updated the Court with his current address, Dkt. No. 21. Accordingly, the undersigned ORDERS that the above-styled and numbered cause be REOPENED and THE STAY LIFTED.

After careful consideration of the claims in Munerlyn's Complaint, Dkt. No. 1, and the supplementation of those claims through his response to the Court's questionnaire, *see*

1

Dkt. No. 17, the undersigned recommends that Munerlyn's claims should be DISMISSED.

## I.   JURISDICTION

Munerlyn brings this action under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3). Venue is proper in the Northern District of Texas, Abilene Division, because Munerlyn's claims arise from his incarceration at the Robertson Unit located in Jones County, Texas. 28 U.S.C. § 1391(b)(2). The undersigned has the authority to enter these Findings, Conclusions, and Recommendations after United States District Court Judge James Wesley Hendrix transferred Munerlyn's case to the undersigned for preliminary screening. Dkt. No. 10; 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favor the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

On February 2, 2023, Munerlyn alleges that maintenance employee Lukomba exposed him to hazardous fumes by placing a heater in his section at the Robertson Unit, which immediately began emitting white smoke. Dkt. No. 1 at 6. Munerlyn states that the

substance in the smoke was later identified as "colesen." *Id*. According to Munerlyn, the heater was placed in the section because the building lacked heat and outside temperatures were cold. Dkt. No. 17 at 2.

Munerlyn alleges that the heater emitted smoke for approximately five hours—from 3:00 p.m. to 8:00 p.m. Dkt. No. 1 at 6. During that time, he experienced heavy coughing, chest pain, and lightheadedness. Dkt. Nos. 1 at 6; 17 at 3. Correctional Officer Hakizimana eventually unplugged the heater, and Nurse Mayfield arrived after the smoke had cleared to "check on inmates." Dkt. No. 1 at 6. Munerlyn alleges that Nurse Mayfield evaluated inmates at random and, for unknown reasons, did not examine him despite him wanting medical attention. Dkt. Nos. 1 at 6; 17 at 4.

After medical staff left, Hakizimana plugged the heater back in. Dkt. No. 1 at 6. Munerlyn alleges that the heater remained on for several additional hours, although he cannot recall how long it emitted smoke during this second period. Dkt. Nos. 1 at 6; 17 at 2. He further asserts that Hakizimana acted intentionally to harm inmates by restoring power to the heater. Dkt. No. 17 at 4. Eventually, a maintenance employee, possibly Lukomba, unplugged the malfunctioning heater. Dkt. No. 1 at 6.

Munerlyn brings claims against Lukomba and Hakizimana for "knowingly exposing [him] to hazardous and toxic fumes" in violation of the Eighth Amendment's prohibition on unconstitutional conditions of confinement. Dkt. Nos. 1 at 3; 17 at 5 (cleaned up). He also asserts a claim against Nurse Mayfield for deliberate indifference to serious medical needs based on her alleged refusal to evaluate him following the exposure. *Id*. Munerlyn seeks $100,000 in damages for pain and suffering. Dkt. No. 1 at 4.

### III.   THE PARTIES

Munerlyn names three defendants: (1) CO Hakizimana, (2) maintenance worker Lukomba, and (3) Nurse Mayfield.[1] Section 1983 provides a cause of action against state actors. "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted). For purposes of screening, the Court presumes that Nurse Mayfield was employed directly by TDCJ, a state agency, and therefore qualifies as a state actor. Even if she were a private actor who was contracted by TDCJ to provide medical services to state prison inmates, she would still qualify as a state actor under the public function test. *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549–50 (5th Cir. 2005); *see also West v. Atkins*, 487 U.S. 42, 54 (1988).

The same reasoning applies to Defendant Lukomba. Whether employed directly by TDCJ or contracted to provide maintenance services within the prison, Lukomba's alleged conduct arises from functions traditionally within the exclusive province of the state, rendering him a state actor for § 1983 purposes. Defendant Hakizimana, as a correctional officer employed by TDCJ, is likewise a state actor.

Munerlyn does not specify whether he sues Defendants in their official or individual capacities. *See* Dkt. No. 1. But courts must liberally construe pro se pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). And because the Eleventh Amendment bars claims for

---

[1] Neither the Court nor Munerlyn were able to identify the full names of the maintenance worker or the nurse.

money damages against state officials in their official capacities, the undersigned construes

Munerlyn's claims as personal capacity claims. *See Will v. Michigan Dep't of State Police*,

491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).[2]

## IV.   LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* or by a prisoner against a

government entity or employee if the court determines the claims are frivolous or

malicious, fail to state a claim upon which relief may be granted, or seek monetary relief

from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong

alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis

in fact if it rests upon clearly baseless factual contentions and it lacks an arguable basis in

law if it contains indisputably meritless legal theories. *See id*. at 327; *Geiger v. Jowers*, 404

F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim "turns on the sufficiency of the '*factual*

allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir.

2015) (per curiam) (emphasis added) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12

(2014) (per curiam)). This means a plaintiff "must plead facts sufficient to show that her

---

[2] The Fifth Circuit has expressly applied Eleventh Amendment immunity to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities). Thus, to the extent Munerlyn seeks monetary damages from Defendants in their official capacities, those claims are barred. Furthermore, the exception to sovereign immunity under *Ex parte Young* does not apply here because Munerlyn does not allege an ongoing violation of federal law and does not seek prospective relief. *See Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021).

claim has substantive plausibility" by "stat[ing] "simply, concisely, and directly events" that entitle them to relief. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

"Substantive plausibility" means enough facts to permit the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). The facts do not need to be detailed, but they must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint should be dismissed if it contains only "naked assertions" of a wrong "without some further factual enhancement[,]" or "threadbare recitals of a cause of action's elements[.]" *Iqbal,* 556 U.S. at 663, 678 (internal citations omitted). Rather, a plaintiff must plead *facts* to plausibly support each element of a claim. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

These standards reflect the guiding principle that *pro se* claims rise or fall at the pleading stage based on the facts alleged, not on whether the plaintiff has invoked the proper legal theory. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)). To this end, courts liberally construe *pro se* pleadings, holding them to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But even *pro se* plaintiffs must plead facts that raise the right to relief above mere speculation. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002)). "[L]iberal construction does not require that the Court . . . create

6

causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a pro se plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Additionally, when assessing a complaint's factual sufficiency, courts must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205–06 (5th Cir. 2007); *Chhim*, 836 F.3d at 469. Courts must also draw all reasonable inferences in the plaintiff's favor. *Elsensohn v. St. Tammany Par. Sheriff's Off.*, 530 F.3d 368, 372 (5th Cir. 2008). But the Court "will not strain to find inferences favorable to the plaintiff." *Tempur-Pedic Int'l Inc. v. Angel Beds LLC*, 902 F. Supp.2d 958, 964 (S.D. Tex. 2012) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

During preliminary screening, the Court must consider not only the operative complaint, but also any supplement to the complaint through documents attached to or referenced in the complaint, the prisoner's questionnaire responses, and the prisoner's *Spears* hearing testimony, if any. *Howard v. King*, 707 F.2d 215, 220 (1983) ("[T]he court

7

was required to look beyond the inmates' formal complaint and to consider . . . materials subsequently filed"); *Eason v. Holt*, 73 F.3d 600, 603 (1996) (*Spears* hearing testimony remained part of the pleadings even after prisoner amended complaint); *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (responses to a questionnaire are incorporated into the plaintiff's pleadings). The Court may also consider other reliable evidence such as the authenticated prison records. *See Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

## V.    ANALYSIS

As discussed above, Munerlyn asserts claims under the Eighth Amendment. He alleges that Defendants Lukomba and Hakizimana violated the Eighth Amendment's prohibition against unconstitutional conditions of confinement and that Defendant Mayfield was deliberately indifferent to his serious medical needs, also in violation of the Eighth Amendment.

### A.  Eighth Amendment Claim for Unconstitutional Conditions-of-Confinement

The Eighth Amendment prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, and "[t]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). While the Constitution does not mandate comfortable prisons, it does not permit inhumane ones. *Rhodes* v. *Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An Eighth Amendment violation occurs when prison conditions pose an unreasonable risk of serious damage to a prisoner's

8

health—an objective test—and prison officials act with deliberate indifference to the risk posed—a subjective test. *Garrett v. Lumpkin*, 96 F.4th 896, 900 (5th Cir. 2024).

The objective component also requires showing that the conditions were objectively "sufficiently serious" or "extreme." *Farmer*, 511 U.S. at 834 (citation omitted) (first quote); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (second quote). The deprivation must involve a basic human need—such as food, clothing, medical care, and safe and sanitary living conditions—and must deny the inmate of the minimal civilized measure of life's necessities. *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021); *Chapman*, 452 U.S. at 347–49. The conditions are measured against the standards of decency that mark the progress of a maturing society. *Chapman*, 452 U.S. at 346–48.

The subjective component requires proof that the prison official acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834 (to violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind). The standard is not met merely from a negligent or even a grossly negligent response to a substantial risk of serious harm. *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020). Rather, the inmate must show that prison officials were: (1) "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (2) "subjectively drew the inference that the risk existed"; and (3) "disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (citing *Farmer*, 511 U.S. at 837) (alterations omitted). More simply, the prison officials must know of, and disregard, an excessive risk to a prisoner's health or safety. *See id.* (citation omitted). Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred

9

by the obviousness of a substantial risk. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

### i.    Conditions-of-Confinement: Lukomba

As to the objective prong of Munerlyn's conditions-of-confinement claim, he alleges that he was exposed to smoke from a malfunctioning heater for several hours, which caused coughing, chest pain, and lightheadedness. He further asserts that the smoke contained a substance he identifies as "colesen," though he provides no additional detail or clarification as to the nature of that substance or how he knows the smoke contained it.

While exposure to toxic fumes may, in some circumstances, rise to the level of a constitutional violation, Munerlyn's allegations are limited to a single incident of several hours' duration. He does not allege that he suffered any lasting injury,[3] required follow-up care, or was diagnosed with any condition as a result of the exposure. Under these circumstances, the alleged condition, while far from ideal and undoubtedly unpleasant, falls short of plausibly establishing that he was exposed to a substantial risk of serious harm.

This conclusion is reinforced by Munerlyn's failure to develop the factual basis of his claim when given the opportunity to do so. The undersigned specifically directed him to provide additional details regarding the severity of the smoke—such as its thickness, the presence of ventilation, and any remedial actions taken by staff—but he declined to

---

[3] *See* Dkt. No. 17 at 3 (**Question No. 5:** You claim that you suffered heavy coughing, chest pains, and light headedness. Are these the extent of your injuries from the smoke? If not, please describe. **Answer:** Yes, these are the extent of my injuries.).

respond. *See* Dkt. No. 17 at 3 (Question No. 6: Provide more facts regarding the severity of the smoke. For instance, how thick was the smoke? Was there any ventilation or fans in the area? Did staff do anything to try and lessen the smoke or otherwise improve the situation? Was it burnt kerosene causing the smoke?[4] Answer: [blank].). As a result, the record contains no factual allegations from which the Court can reasonably infer that the conditions were sufficiently extreme.

The duration of the alleged exposure further undermines his claim. Although even short-term exposure to exceptionally egregious conditions may violate the Eighth Amendment, *see Taylor v. Riojas*, 592 U.S. 7, 52–54 (2020) (filthy cell with massive amounts of feces, four days; then frigid cell with clogged drain and no clothes, two days), less severe conditions must typically persist for a longer period to rise to the level of a constitutional violation. *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). Here, Munerlyn alleges two episodes lasting several hours, without accompanying facts demonstrating that the conditions were so extreme as to be comparable to those recognized as unconstitutional in short-duration cases like *Taylor*.

In sum, absent allegations regarding the nature, concentration, or severity of the smoke, or any resulting lasting harm, Munerlyn has not plausibly alleged that he was subjected to an objectively serious deprivation of a safe and healthy environment.

Even if the objective prong were satisfied, Munerlyn fails to allege facts showing

---

[4] The undersigned believes that Munerlyn may have been referring to kerosene rather than the unknown word "colesen" when referring to the toxicity of the smoke, but because of Munerlyn's refusal to answer this question or to describe the severity of the smoke, he has failed to plausibly allege an extreme condition.

that any Defendant acted with deliberate indifference. As to Defendant Lukomba, Munerlyn alleges only that he placed the heater in the section because the building lacked heat and temperatures were cold. These allegations suggest, at most, an attempt to address cold conditions which resulted in unintended consequences—not that Lukomba was subjectively aware that the heater posed a substantial risk of serious harm and disregarded that risk. Moreover, Munerlyn fails to allege when Lukomba learned the heater was producing smoke, how he learned of the smoke, and what he did in response. The Court cannot reasonably infer simply from the fact that Lukomba placed the heater there that he also both knew of and disregarded the conditions created when it malfunctioned.

Accordingly, Munerlyn's claim against Lukomba should be DISMISSED.

ii.  Conditions-of-Confinement: Hakizimana

Similarly, Munerlyn's allegations against Defendant Hakizimana do not plausibly establish the requisite subjective awareness. Here again, Munerlyn fails to allege when Hakizimana learned of the smoke, how he learned of the smoke, and what he did in response. The only allegations in this regard are that Hakazimana unplugged the heater and he or some other officer summoned the medical staff to evaluate the inmates. It was only after the nurse evaluated several inmates that Hakazimana plugged the heater back in. These facts do not plausibly support deliberate indifference, particularly when, as Munerlyn admits, the officers in the area also would have been exposed to the smoke as well. Munerlyn speculates that Hakazimana plugged the heater back in with the intent to

harm inmates, but he provides no factual support for that conclusion.[5] Conclusory assertions of intent, without supporting facts, are insufficient to establish deliberate indifference. At most, the allegations suggest negligence or poor judgment, which does not rise to the level of a constitutional violation.

Accordingly, Munerlyn's claim against Hakizimana should be DISMISSED.

**B. Eighth Amendment Claim for Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment is violated when prison officials or doctors act with deliberate indifference to a prisoner's serious medical needs, whether by intentionally denying, delaying, or interfering with medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). An Eighth Amendment medical claim has two prongs: objective exposure to a substantial risk of serious harm, and subjective deliberate indifference on the part of the defendants. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

The objective prong of a medical claim is satisfied when the prisoner faces a substantial risk of serious harm, which requires the existence of a serious medical need, such as serious illness or injury. *Estelle*, 429 U.S. at 104–05. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n. 12; *see also id.* at 346 n. 17 (noting that there was no dispute that a head wound, which would become

---

[5] *See* Dkt. No. 17 at 4 (**Question No. 8:** If you know, why did C.O. Hakizimana plug the heater back in? What was the temperature in the Unit while the heater was unplugged? Were the Correctional Officers also exposed to the smoke? **Answer:** I believe C.O. Hakizimana was intentionally trying to harm us by plugging the heater back in. The Correctional Officers were exposed until they left the section while the heater was still running.).

infected if not treated, posed a substantial health risk).

Even where a substantial risk exists, exposure to that risk does not violate the Eighth Amendment unless the defendants subjectively had the applicable mental state regarding that exposure. Satisfying this subjective prong requires the plaintiff to show that the defendant was: (1) aware of facts permitting inference of risk, (2) subjectively drew that inference, and (3) disregarded the risk; the defendant's conduct must amount to wanton disregard for the prisoner's serious medical needs. *Spikes v. Wheat*, 141 F.4th 662, 668 (5th Cir. 2025) (citing *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quotation marks, citation, and alterations omitted)).

The deliberate indifference standard is not satisfied by allegations of negligence or medical malpractice, or claims that the defendants made an incorrect diagnosis, failed to provide additional treatment, or failed to perceive a significant risk. *Estelle*, 429 U.S. at 105–07; *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). The decision to provide further treatment, such as further testing or referral to a specialist, is "a classic example of a matter for medical judgment" that does not constitute deliberate indifference. *Estelle*, 429 U.S. at 107. Deliberate indifference is instead shown through allegations that an official refused to treat the prisoner, purposefully treated him incorrectly, or otherwise engaged in action showing wanton disregard for serious medical needs. *Estelle*, 429 U.S. at 105–07.

With these principles in mind, the undersigned considers whether Munerlyn has plausibly alleged that Nurse Mayfield was deliberately indifferent to his serious medical needs. The undersigned finds that he has not.

14

As explained above, Munerlyn's symptoms were relatively minor, short in duration, and did not develop into any lasting harm.  When asked by the Court to describe the smoke, the ventilation in the area, and the defendants' efforts to remedy the situation, Munerlyn declined to do so. Dkt. No. 17 at 3. Even when the Court draws all reasonable inferences in his favor, Munerlyn's allegations fall short of plausibly establishing a substantial risk of serious harm.

Otherwise, Munerlyn's allegations about Mayfield's state of mind are thin to non-existent. When asked in the questionnaire to explain why he did not receive medical care, Munerlyn stated only that he "wanted" to be assessed by Nurse Mayfield but was "refused" for unknown reasons. Dkt. No. 17 at 4. This allegation is insufficient. Alleging that he "wanted" medical attention does not establish that he had a serious medical condition or specifically needed medical attention, let alone that Mayfield knew he needed medical attention and ignored him. Munerlyn must demonstrate that Mayfield refused to treat him despite a medical need, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for his serious medical needs. Munerlyn's mere disagreement with Mayfield over whether he needed an examination is insufficient to make out an Eighth Amendment violation. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Moreover, Munerlyn's assertion that he was refused care for "unknown reasons" does not support a finding of deliberate indifference. Deliberate indifference is a high bar and requires more than negligence or an unexplained failure to provide care; it requires that the defendant knew of and consciously disregarded a substantial risk of serious harm.

15

Accordingly, Munerlyn's claim against Mayfield should be DISMISSED.

## VI.    LEAVE TO AMEND

Still, there is the issue of whether the Court must give Munerlyn leave to amend his complaint. Ordinarily, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

Here, Munerlyn has already received an opportunity to amend his claims through the Court's questionnaire. *See* Dkt. No. 17. His responses—or refusal to respond—have failed to cure the defects within his Complaint. Based on this, the undersigned finds that further amendment would not produce plausible allegations establishing deliberate indifference with respect to either Munerlyn's conditions-of-confinement claims or his medical-needs claim. Accordingly, granting leave to amend would be futile.

## VII.    CONCLUSION

For the reasons above, the undersigned RECOMMENDS that Munerlyn's claims under 42 U.S.C. § 1983 against all Defendants be DISMISSED with prejudice under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## VIII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IX. TRANSFER OF CASE

Having completed the preliminary screening of Munerlyn's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1:23-CV-00202-H.

ORDERED this 11th day of May 2026.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

17